May it please the court, I'm John Wolfgang Gahart for the petitioner Mr. Robles Martinez. In 1980, the matter of Garcia Flores, 329, the BIA held that 8 CFR 287.3 was intended to serve the purpose of benefit to the alien. Now in Garcia Flores, Ms. Garcia Flores was arrested without a warrant at her work based on an INS survey interrogation of her employer. The officers took Ms. Garcia to their district office. They conducted an in-depth secondary interview from which they obtained incriminating statements and pressured her to accept a voluntary return. After the interview, she obtained counsel, withdrew her voluntary return request and requested placement into proceedings before an immigration judge. On appeal, the BIA found that the incriminating statements given in the interview and recorded in the I-213 and I-274 forms of the time were excludable for failure of the officers to inform her and follow the regulation. Almost 30 years later, the BIA holds that the same regulation, which had not undergone any substantive changes, applied only after the alien was placed into proceedings. Now in Mr. Robles' case, he got arrested without a warrant after presenting his legal permanent resident card for inspection as a passenger in a vehicle which had an undocumented alien. The officer took custody of Mr. Robles and took him to the port detention center, later conducted an in-depth interview. Later sometime between 2 and 5 a.m. What time was he arrested? I think you'll find it was about 6 p.m. If I recall, it was several hours later. Don't you think that's significant? He was in handcuffs for two hours. Yes. And that would have taken until 8 p.m. And then the interrogating officer says he doesn't recall exactly, but it was before 5 a.m., but obviously in the early morning hours. Yes. I mean, as the record shows, he argued that the way that his statements were taken were coercive. But I think the more important issue here with regards to what the BIA held and how it denied the case was that after this secondary interview, they not only obtained incriminating statements from him, but they took a sworn statement. And the sworn statement was taken on the form I-877, Record of Sworn Statement in Administrative Proceedings. Yet the BIA holds that, well, he wasn't actually put into proceedings yet. Therefore, any of these protections in 287.3 don't apply. Now, I think the thing that concerns us all in this case is the timing of the events. And I think the best way to look at this whole issue is looking at 287.3 as a whole, because this regulation is well over 30 years old. I don't have the exact date, but certainly in 1979 it was in existence when my law partner argued it in front of the BIA and won a matter of Garcia-Flores. But since then, as you can see from my brief, the amendments, regulatory amendments to 287 are not – there's no substantive changes. The BIA, of course, certainly suggests that there was a change that made a difference. Now, maybe they're just wrong, but – I believe that they're just wrong, Your Honor. They say the current version of the – you know, they say that Garcia-Flores addressed a prior version of the regulation at issue, and the current version provides that an alien must be advised that any statement may be used in subsequent reading only after he's placed in formal proceedings. Now, did that – was that not the case? I don't think that's the – I don't think that's the case. I don't think that the regulation – like I said in my opening brief, I detail all of the changes to the regulation all the way back from its 1979 form that the BIA was ruling on in matter of Garcia-Flores to the present through all the IRA-IRA changes. Really, the most substantive change was the 1997 alteration where they split the one paragraph, 287.3, into four subparagraphs. And even then, they kept the original drafter's structure because – What do we do with 287.12? 287.12 is very, very interesting because it kind of contradicts two things. First, the original finding of the BIA that 287.3 was intended to serve a purpose of benefit to the alien. Well, that would only – it's not inconsistent with Garcia-Flores if it comes after. And in fact, it would probably have been intended to undo Garcia-Flores by regulation, by saying this doesn't – this creates – we'll discipline our agents if they violate these sections, but we're not creating rights in aliens. Well, I think that there's a problem with that because you're also – the regulation is also contradicting U.S. v. Calderon-Medina. Or if – because the regulation hasn't substantially changed. It implicates fundamental constitutional rights, right? Right. So a Fourth Amendment argument or a Fifth Amendment due process argument is different. Those will stand on their own. But you're making an argument that by virtue of the regulations, the service was required to exclude this information. Yeah, because there's a procedure that's set up for warrantless arrests. And the procedure is you examine a – What if 27 – what if 27.12 had been more explicit and said, Look, by virtue of these regulations, these regulations are for the disciplining of our agents and do not create rights in any aliens. What if it had been that explicit? Then what? Well, I think even then there's a problem because what good are regulations if they're not enforceable? You might as well just throw them into a shredder because if you – if someone can't enforce the person who is affected by the violation of the regulations – So that might carry – your argument might go just a little far. But I think that if there's no right to enforce the regulations, to enforce this procedure, because this all flows from the due process clause, the idea that if you notice the headings of each of the subsections that were created in 1997, they mirror everything that was there in 1979, that there would be an examination for prima facie evidence. If there exists prima facie evidence, the officer will, not may, but will refer the alien to the immigration judge. Thereafter, there should be notice to the alien. And then the last paragraph, dealing with custody, in the exact same order as it existed in 1979. It's a process. When you, you know, zoom out and look at this again, there's a process that needs to be respected. And it's only respected in cases where there's warrantless arrests, where a person, you know, is just in circumstances and they're arrested. Now, the – again, going through the whole process, the fact that they took a sworn statement to set this guy up to be able to find him inadmissible for smuggling, and the sworn statement was taken on an I-887 record of sworn statement. Don't you mean deportable? No. You mean inadmissible? I believe that the charge was under a 212. Once a person's a lawful permanent resident and is admittedly in this country legally? But because he was an applicant. Because I think inadmissible puts your client in a much more difficult position than being subject to the punishment of deportation. What can be more important to an individual in his circumstances than remaining in this country? Yes, Your Honor. But if your position is the issue is inadmissible. Well, I think that that's what the government makes it an inadmissibility issue because he's at the border. And they're claiming that because under INA section 101A13, where they talk about whether a legal permanent resident is an applicant for admission, if a person has violated the Immigration and Nationality Act or committed a crime, they become applicants for admission. But the underlying fact is that if he's advised of his rights, he knows that he's going to be placed in proceedings. If the timing is correct, that they get a prima facie case, they find this gentleman, he shows his LPR card, there's an undocumented person in the car with him, there's the prima facie case. Then he goes and he's taken into custody. If the regulations are followed as they're written down in 287, you go to 287B and then you have the determination and referral to the IJ. You don't jump to the we're taking a sworn statement in administrative proceedings because, again, the whole process is to inform the person, to advise them, look, you have a right against incriminating yourself. We're going to use these statements against you in proceedings. If you give us something that we can use, we're going to use them against you. And the whole process is designed for the benefit of the alien, whether 287.12 is written in there or not. From 1979, you know, the substantive core of this regulation was always intended to benefit the alien. They may be trying to shield their officers from people raising these issues, but the reality is that there's case law and there's implication of fundamental constitutional rights. What do you do with the phrase in paragraph C that says that the alien, an alien arrested without warrant and placed in formal proceedings will be advised? For C, I refer you to B, because that goes to the sequence and the timing, because that's what's critical in this case. The sequence of events, because in B, that if the examining officer is satisfied that there's prima facie evidence. Well, until you ask him some questions. But that's all you need for prima facie evidence. You have the fact that he's showing you he's a legal permanent resident, here's my LPR card. You have the fact that you have a gentleman who's in the car who's not documented. There's some prima facie evidence right there that he may be violating the law. You're saying at that point that they were obligated to place him into formal proceedings. Yes, and if you want to follow the exact... If the officer doesn't think he's got, he doesn't have the case, then what? Then he releases him and lets him proceed into the United States. Well, he's not entitled to ask him any of the questions at the border? I think that the officer had set this whole thing up so that he could put himself in the position of having an unassailable case against Mr. Robles-Martinez, because he not only had Mr. Robles-Martinez to ask questions of, he had the undocumented alien. He had several people in the car that he got to ask questions of, but, of course, they were U.S. citizens, so he didn't have any jurisdiction over them, only the U.S. attorney would have had jurisdiction to bring criminal sanctions against them. He only had jurisdiction over Mr. Robles-Martinez, and he had all these people he could ask questions from. There's no question that he probably had a great prima facie case, and that's why he went to all this trouble to get a file, or complete a written sworn statement before even placing him in proceedings, because he didn't have any jurisdiction. Because that basically put him in handcuffs before the immigration judge. When you get a written sworn statement before advising him that you're going to put him in proceedings before he knows what the risks are in giving a sworn statement, it's fundamentally unfair to put a person in that position. Is it your argument that he has to be put in the proceedings, or is your argument that if they're going to question him initially, they have to give him warnings? Well, I think that either way you do it, we can follow it either way, because there is a flexibility clause that was put in here that I allude to, that the officers can take, and this is at the end of subsection B of 287.3, take whatever other action may be appropriate or required under the laws or regulations applicable to the particular case. I think there should be some flexibility reading in here in terms of reasonableness. If you're going to put him into proceedings right away and take a statement after you file I-862 notice to appear before an immigration judge, then you should give him the warning as to we're going to take your sworn statement, we intend to put you into proceedings, but we're not doing it yet. And we are informing you that anything you say can be used in these subsequent proceedings. That's been in there since 1979. There's no reason that that warning can't be given at the moment after they have a prima facie case, and they want to go beyond just collecting prima facie evidence. They're going into a sworn statement. This is beyond prima facie. This is building the case for removal of this gentleman. And if they don't want to do that, if they want to follow the BIA and say, okay, we can't do this until he's placed or we can't, we're not going to give him the warning until he's placed into proceedings, then they should follow the regulation. And under subpart B, as soon as they have the prima facie case, hey, look, they said that this guy's, they brought him in and the driver said that and blah, blah, blah. We got his information from all these other occupants in the car. He's the only person we can charge with being inadmissible or deportable. Then regulation says that we will refer him to an immigration judge. And right then and there is when they should file the I-862 notice to appear and put him on notice that we're going to try and take away your legal permanent resident status. We're going to claim that you were smuggling this gentleman. What argument do you have, what evidence do you have that 287.3b exists for the benefit of the alien? What right of the aliens is that protecting? I think it's protecting the right to be placed on notice that he's in proceedings. Because when you refer to an immigration judge, that automatically puts in a whole point. But he wasn't in proceedings. But 287.3b says that they will place him into proceedings. Right. And that process requires. They may not put him into proceedings. We didn't know at this point. Well, if they don't know whether they have a prima facie case. See, the problem is that once they have the prima facie case, the regulation requires them to put him into proceedings. But your whole contention is once you think they've got enough evidence for a prima facie case, then they're obligated to put him into proceedings without any further question. I think so. And we can second guess the officer as to what constitutes a prima facie case. We can look at what evidence they had, what statements they had taken from all the other witnesses. Once the officer gets enough, then we suppress everything else after that. Because the officer has messed up by trying to get more evidence than was absolutely necessary. Well, in this case, he took a sworn statement to get an ironclad case. Well, it turned out to be ironclad. It's not clear that the officer would have known that at the time. Well, I think it is clear because there was two sets. You have an I-213 because you have actually several people being interviewed upon arrest. Of course, the person who was undocumented, the driver, the other occupants of the car. And then, of course, the only person there with an LPR card, which is Mr. Robles Martinez. And they know they have jurisdiction only over him because the U.S. Attorney's Office down in San Diego is not taking every citizen who's bringing over an illegal alien and bringing a prosecution against them. It's just not happening. They don't have the resources down there. The only thing that the CBP, Customs and Border Protection inspectors there at the San Ysidro border can do is place the people who aren't U.S. citizens into proceedings and try and take away their green cards. And that's what's happening all over. And it's, in many ways, many of the cases that we've received at our office, 16-year-old, a minor who was in the car who happened to be an LPR while the adult citizen... Counsel, you may want to finish up your... Yeah, I think that goes over the scope of what the BIA decided here in this case. But that's just what's going on out in the world. But the reality is that 287.3, the board held because it was a matter of Garcia Flores, the whole issue was does this regulation serve to protect the alien? They found that it did. And if it does serve to protect the alien, the alien should be able to exclude evidence that's gathered when the regulation is violated in one way or another. And again, the violations mainly are of timing. Okay. I thank you. I think we understand the argument. I will allow you one minute from the government. Thank you, Your Honor. Good morning. May it please the Court. Nyree Simonian on behalf of the government. Martinez is not entitled to the suppression of the sworn statement that he considered... Counsel, before you read us this, I have some basic questions. At page 22 of your brief, the government states, nor did Martinez enjoy the right to have an attorney when he was questioned by Officer Cardina. Is it the position of the government in this case that Mr. Robles did not have the benefit of the Fifth and Sixth Amendments? I believe the position of the government is that that right was not effective at the point when the... When he's being questioned at 3 o'clock in the morning, having been in custody for 8 or 9 hours, and they already know immediately that he's legally in the United States, lawfully in the United States, he's a permanent resident, is it the government's position that then when they decide, well, we're going to talk to him further, we're going to interrogate him further as to whether or not he's committed a crime, aiding and abetting illegal entry? Is it the government's position that there's no Fifth or Sixth Amendment, Miranda-type... I believe the government's position, as the panel alluded to, was that when the officer was obtaining additional information to determine whether Petitioner was actually smuggling his cousin in, that he was not entitled at that point to write... He's not entitled to Miranda warrants at that time? No. He's not entitled to a lawyer at that time? No, Your Honor. And if a lawyer comes and says, my client's been locked up for 9 hours, I want to talk to him, he's not... Just let me finish. He's not entitled to talk to the lawful permanent resident? Well, I respectfully disagree that he was locked up in the terms of, you know, locked up where he was, you know, in a cell... Well, he was in a holding cell from 6 p.m. at night until 4 or 5 o'clock in the morning. He was, according to the record, sitting in a small room, not handcuffed... Well, I said holding cell. The officer said in his testimony. Let me ask you this. Don't you think it's somewhat coercive... There's no question of alienage here, was there? No, when they found his... So, he's being questioned about the possible commission of a crime. The first thing the officer did when he walked in there at 3 or 4 in the morning said, I'm going to advise you of something. If you lie to me, if you commit perjury, you can be put in prison for 5 years and fined whatever the amount is. That was the warning that went to Mr. Robles. Why isn't it just as appropriate to say, and I'm investigating you, suspicion of a crime, and as all the cases recognize, he's entitled to the protection of the Bill of Rights at that time, just like any other person in this country. Well, the government's position, I argue, is that at that point in time, he wasn't put in formal proceedings. He was... Well, no, I'm talking about the constitutional rights of this individual. What's the position? Yes, is it your position he's not entitled to the Miranda warnings? Well, actually, this court has held that in light of the alien's burden of proof and the requirement that the alien answer non-incriminating questions and the potential for adverse consequences by advising them to remain silent... But those are alien age questions, as Lopez Mendoza was. Are you a citizen or not? And the court obviously, in Lopez Mendoza, felt the Fifth and Sixth Amendments applied because they then moved into the question of, should we therefore exclude? Now, I don't understand the government's position. Was Mr. Robles entitled to the benefit of the Fifth and Sixth Amendment while he's being interrogated about the commission of a crime, not alien age, but the commission of a crime, or not? What's the government's position? I believe that the government's position is that Martinez's constitutional rights were not violated while he was being questioned by the officer. Counsel, does that turn on the question as to whether the government was thinking of charging him, of revoking his permission to be in the United States and deporting him, so he was ordered removed here, or whether he's going to be charged with alien smuggling? If this were a criminal proceeding, then would we be entitled to use the same information that the officer obtained here? That might be different in the criminal proceeding. However, this was a civil proceeding, and it was the immigration proceeding, and the presence of counsel during interrogation has been found to not be applicable to... Is it clear at the time, either by internal proceedings for the Border Patrol or anything else, that this alien was only going to be subjected to an order of removal and would not be subject to criminal process? According to the record, I'm going to say it was not clear until the notice to appear was issued. But you concede that if the government had decided to charge him with a criminal act, that it is likely then that we would have had to suppress this information. I don't think I should concede to that, but I would say that the rules applied in the criminal context would be different. Thus, they might have been suppressed in that context. Okay, I'd just like to go to whether the regulation was in fact violated. Two things had to happen before the regulation was violated, and one of them did not. The alien needed to be placed in formal proceedings. It is clear from the record that the alien was not placed in formal proceedings, and the questioning was complete by the officer. How far do we have to go? The opposing counsel says, look, they had a prima facie case. That's all they were entitled to under B. They have to refer it to an I.J. that creates the formal proceedings. If they want to do something further than that, then they've got to follow the other regulations. Well, I'm also going to argue to look at the big picture. Initially, I think the officer was taking into discretion the fact that the first officer was not clear, but I don't think he spoke Spanish until he got to Officer Condena. And then he gets to Officer Condena, and here's someone that can speak to him in his native language. He can, you know, understand better what's going on in the situation. He starts to ask him simple questions and finally asks, you know, why was he coming into Mexico? Why was he coming from Mexico to the U.S., and why did he go to Mexico? And based on that big picture, I would say that it was appropriate for the officer at that point to question him further. I think we have a whole other argument again here against the government saying that if he had been given a notice to appear right at the initial, the primary questioning, finding out that the cousin was not a legal, was not legally entering the U.S., then again, we'd be questioning as to why there wasn't any further questioning done. I think in the way that the officer handled this, it was appropriate. So moving on from that point, I'd like to argue that Regulation 8 CFR 287.3C was not intended to benefit Martinez. Martinez needed to show that the regulation benefited him in order to render him removable. The regulation did not create any judicially enforceable rights, and the exclusionary rule does not apply. I'd like to go back to a regulation you were discussing before to 287.12. That regulation was intended, as the supporting notes say, to ensure that the regulations do not create rights not otherwise existing in law. And the court has found that typically there must be an exceptional reason, such as the protection of a constitutional right to invoke the exclusionary rule. My position today is that Martinez's constitutional rights were not violated at the point that he was questioned by the court. Finally, if I may, I'd just like to say that Martinez does not challenge whether the INS even met their burden of proof with his removability. He simply is questioning whether his sworn statement was intended to, he just basically says that his argument was to intend to benefit him and violated his constitutional rights. Finally, the board's interpretation of a regulation is given controlling weight. I would say that the court and the panel today support that position of the board. If there are no further questions, I'll submit. Thank you, counsel. Mr. Gehard, we'll give you one minute. The government's position that there was no rights that could be protected, I think just overlooks the fact that 287.3 as the board recognized almost 30 years ago and it is, as is clear from the history, is filled with a lot of confusion. It's filled with implication for constitutional due process protections. It creates a procedure, creates a structure, it should be followed, and the fact that the officers can jump the gun without any sanction, to put someone in a position where they're making statements and incriminating themselves without any idea of what's coming next, it's completely counterintuitive and illogical because we're still a nation of laws. We still have a constitution that's designed to protect people like Mr. Robles-Martinez. Thank you very much for your time. Thank you, counsel. Thank you, counsel, for the argument. Robles-Martinez is submitted.
judges: Canby, Bybee, Quackenbush